UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| JACKIE DANE PARKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:13-CV-102-BG |
| | ) | ECF |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Plaintiff Jackie Dane Parks seeks judicial review of a decision of the Commissioner of Social Security denying his application for disability insurance benefits.  The United States District Judge transferred this case to the undersigned United States Magistrate Judge for further proceedings.  In accordance with the order of transfer, the undersigned now files this Report and Recommendation.

## I.    Statement of the Case

On August 29, 2011, Parks and a vocational expert testified at a hearing before an administrative law judge (ALJ).  Parks was represented by a non-attorney representative at the hearing.  The ALJ determined on September 19, 2011, that Parks was not disabled because skills from his past relevant work were transferable to other jobs existing in significant numbers in the national economy that Parks was capable of performing.  The Appeals Council denied review on February 20, 2013.  Following denial of a request for review, the ALJ's decision becomes the Commissioner's final decision and is properly before the court for review.  *Sims v. Apfel*, 530 U.S.

103, 107, 120 S. Ct. 2080, 147 L. Ed. 2d 80 (2000); *see also Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) (holding the Commissioner's final decision incorporates the Appeals Council's denial of a claimant's request for review).

## II.    Factual Background

Parks claims that he became disabled on December 31, 2008, at age 51 due to multiple sclerosis, hypertension, partial paralysis, and affective/mood disorders.  (Tr. 40–41, 46, 96, 117).  Parks has a high school education, is 6 feet tall, and weighs 190 pounds.  (Tr. 117–18.)  He worked as a contract coordinator for Southwestern Bell Telephone Company from 1976 until 2008, and he last worked in 2009 when he provided consulting and training for a contractor who once worked for him.  (Tr. 27–28, 118–19.)

## III.    Standard of Review

A court reviewing the Commissioner's denial of disability insurance benefits is limited to determining (1) whether the decision is supported by substantial evidence in the record and (2) whether the Commissioner applied the proper legal standards.  *See* 42 U.S.C. § 405(g) (2013); *see e.g.*, *Higginbotham*, 405 F.3d at 335.  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).  Without reweighing the evidence or substituting its own judgment, a reviewing court must examine the entire record, including evidence favorable to the Commissioner as well as contrary evidence.  *See Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).  If the Commissioner's findings are supported by substantial evidence, they are treated as conclusive and will be affirmed.  *See Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971).

IV.    **Discussion**

Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A) (2013). In making a disability determination, the Commissioner conducts a five-step sequential evaluation process to determine whether: (1) the claimant is currently working; (2) the claimant has a "severe impairment"; (3) the impairment meets or equals an impairment listed in Appendix 1 of the regulations; (4) the claimant is capable of performing past relevant work; and (5) whether the claimant, after taking into account age, education, previous work experience, and residual functional capacity, is cable of performing any other work. *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007); 20 C.F.R. § 404.1520(a)(4) (2013). If a disability determination is made at any step in the process, the finding is conclusive and the analysis terminates. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

At the first four steps in the analysis, the claimant bears the burden of proof. *Id.* Once this burden is satisfied, the Commissioner bears the burden of showing the claimant is capable of performing other work that exists in significant numbers in the national economy. *Id.* After making such a showing, the burden shifts back to the claimant to rebut the Commissioner's finding. *See Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

In this case, the ALJ determined: (1) Parks was not currently engaged in substantial gainful activity; (2) Parks' combination of impairments—multiple sclerosis, cervical degenerative disc disease, partial tear of the supraspinatus tendon, and joint hypertrophy—were severe in nature; however, Parks' depression and adjustment disorder did not cause more than a minimal limitation

3

in his ability to perform basic mental work activities and were nonsevere; and (3) Parks'
combination of impairments did not meet or medically equal the severity of one of the listed
impairments in Appendix 1. (Tr. 12–13, 15.) Following step three, the ALJ assessed Parks' residual
functional capacity (RFC) and found that he had the RFC to perform sedentary work, although
limited to no overhead reaching.  (Tr. 15.)  At step four, the ALJ found that Parks could not return
to his past relevant work as a contract coordinator, which is classified under the regulations as light,
skilled work.  (Tr. 18.)  After considering testimony from a vocational expert and Parks' RFC, age,
education, and work experience in conjunction with the Medical-Vocational Guidelines, the ALJ
concluded at step five that Parks was not disabled because skills from his past relevant work would
transfer to other jobs that Parks was capable of performing, such as order clerk and procurement
clerk, which exist in significant numbers in the national economy.  (Tr. 18–19.) Parks argues on
appeal, however, that the transferable skills identified by the ALJ are too vague to be considered
"skills" for the purpose of denying disability benefits.  (Pl.'s Br. 8.)

   After the Commissioner determines at step four that the claimant is unable to perform his
past relevant work, the burden shifts to the Commissioner to show the claimant is capable of
performing other jobs that exist in the national economy.  *See Masterson v. Barnhart*, 309 F.3d 267,
272 (5th Cir. 2002).  To aid in this determination, the Commissioner promulgated the Medical-
Vocational Guidelines ("Grid Rules").  *See Heckler v. Campbell*, 461 U.S. 458, 461–62, 103 S. Ct.
1952, 76 L. Ed. 2d 66 (1983); 20 C.F.R. pt. 404, subpt. P, app. 2 (2013).  A disability determination
under the grid rules takes into account an individual's age, education, previous work experience,
RFC, and transferable skills.  20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(a).  Sole reliance on the
grid rules is appropriate when the claimant suffers only from exertional limitations, or when his non-

exertional limitations do not sufficiently affect his RFC.[1] *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000); SSR 82-41, 1982 WL 31389, at *1 (1982). If an individual's specific vocational profile is not listed within the grids, such as when his RFC falls between the ranges of work indicated, the ALJ may not mechanically apply the grid rules; however, the grid rules may be used as a frame of reference to guide the ALJ's decision. 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(d). In that situation, the ALJ must rely instead on testimony from a vocational expert or other similar evidence to show that such jobs exist. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

After finding that Parks could perform only a limited range of sedentary work, the ALJ stated in his opinion that he used the grid rules as a framework for determining Parks' disability status. (Tr. 19.) Parks was 51 years old on the alleged disability onset date, which is defined as a person "closely approaching advanced age." 20 C.F.R. § 404.1563(d). The regulations note that an individual in this category may be significantly limited in vocational adaptability if they are restricted to sedentary work. 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(g). For an individual in Parks' age range with severe impairments precluding him from performing past relevant work and with a RFC limited to sedentary work, the disability decision turns on whether the skills gained in his previous work experience are transferable. *See* pt. 404, subpt. P, app. 2 §§ 201.14, 201.15; *see also Muehling v. Colvin*, 2:12–CV–013, 2013 WL 1194078, at *5 (N.D. Tex. March 6, 2013) (applying the grid rules to claimant's specific vocational profile).

In order to determine whether the skills Parks gained in previous work were transferable, the ALJ elicited the opinion of a vocational expert. At the hearing, the ALJ asked the vocational expert

---

[1]Thus, an ALJ's finding of severe non-exertional impairments at step two prevents an ALJ from relying solely on the grid rules at step five. *See White v. Astrue*, 239 Fed. App'x. 71, 73–74 (5th Cir. 2007). Here, Parks does not argue with the ALJ's finding that his non-exertional impairments did not sufficiently affect his RFC.

whether any skills Parks gained from past work would be transferable to sedentary work.  (Tr. 37.)

The vocational expert testified to the following skills: "organizational skills, coordination skills, clerical skills, record-keeping skills, problem-solving, [and] decision-making skills."  (Tr. 37–38.)

Parks asserts, however, that these are too vague and that the ALJ did not identify any specific work skills learned through education or experience that would provide Parks with an advantage over unskilled laborers in the workforce.  (Pl.'s Br. 9.)  Work experience encompasses the skills and abilities that a claimant has acquired through previously performed jobs, which functions to show the type of work that the claimant may be able to perform.  *See* 20 C.F.R. § 404.1565.  A skill is defined as "knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level (requires more than 30 days to learn)."  SSR 82-41, 1982 WL 31389, at *2.  Further, "a skill gives a person a special advantage over unskilled workers in the labor market."  *Id.*

Substantial evidence supports the ALJ's finding that Parks gained skills in his past relevant work as a contract coordinator.  The ALJ stated that the Dictionary of Occupational Titles (DOT) classified Parks' previous job as light, skilled work.  (Tr. 18.)  On a Disability Report Form included in the administrative record, Parks reported that his job involved reviewing contract elements for contractors, evaluating the offers, and listing them for review.  (Tr. 119.)  He answered affirmatively to using machines, tools, and equipment; using technical knowledge and skills; and writing and completing reports.  *Id.*  Job duties such as reviewing and evaluating contract offers and writing reports require the use of skills acquired through performance of an occupation above the unskilled level—skills that go beyond the carrying out of simple job duties.  *Cf. Muehling*, 2013 WL 1194078,

6

at *4 (finding it "unclear from the record exactly what entails a customer service skill" or "what there is about a 'customer service skill' that requires more than thirty days to learn and gives plaintiff a special advantage over other job applicants").

After identifying the skills a claimant acquired through past relevant work, the ALJ must make a determination regarding whether or not those skills are transferable to other occupations. Transferability applies only to situations "when the skilled or semi-skilled work activities [claimant] did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work." 20 C.F.R. § 404.1568(d)(1); SSR 82-41, 1982 WL 31389, at *2. The regulations state that transferability is most probable for jobs requiring the same or a lesser degree of skill, or jobs which use similar tools, machines, materials, and processes. *See* §404.1568(d)(2). Transferability thus depends upon the similarity of the "occupationally significant work activities" required by various jobs. § 404.1568(d)(1). However, exact similarity between jobs is not required for a finding of transferability. *See* § 404.1568(d)(3). Only particularly specialized skills or those acquired in "an isolated vocational setting (like many jobs in mining, agriculture, or fishing)" are "not readily usable in other industries, jobs, and work settings" and thus are not transferable. *Id.*

When the transferability of skills is at issue, the ALJ must make certain findings of fact and include them in his decision. SSR 82-41, 1982 WL 31389, at *7. In order to find that a claimant has transferable skills, "the acquired work skills must be identified, and specific occupations to which the acquired work skills are transferable" must be listed in the decision of the ALJ. *Id.*; *Muehling*, 2013 WL 1194078, at *3. Because the transferability of a skills is a determination ultimately made by the ALJ, the vocational expert's testimony must be specific enough to provide the ALJ with enough information to make an informed decision. *See Muehling*, 2013 WL 1194078,

at *4; *see also Jeffcoat v. Sec'y of Health & Human Servs.*, 910 F. Supp. 1187, 1195 (E.D. Tex. 1995) (finding no support that plaintiff, despite the title of foreman, was actually involved in clerical functions—which would transfer to the jobs of time keeper or work scheduler—at his previous job).

The vocational expert testified that the skills Parks gained in his past work—organizational skills, coordination skills, clerical skills, record-keeping skills, problem-solving and decision-making skills—would transfer to the sedentary, semi-skilled jobs of order clerk and procurement clerk. (Tr. 37–38.) According to the DOT, the jobs of order clerk and procurement clerk involve duties such as compiling and recording information and filing and processing orders. *See* Dictionary of Occupational Titles 217, 218 (4th ed. 1991) (Listings 249.362-026, 249.367-066). The transferable skills identified by the vocational expert—including record-keeping skills and decision-making skills—mirror the skills necessary for the jobs of order clerk and procurement clerk. The skills are "not so dissimilar or remotely related to the jobs identified by the vocational expert as to hamper their transferability." *See Huff v. Shalala*, 1:91–CV–499–GR, 1994 WL 776889, at *3 (S.D. Miss. Sept. 30, 1994). *Cf. Rivera v. Astrue*, 6:08–CV–075–C, 2010 WL 711717, at *5 (N.D. Tex. March 2, 2012) (reversing and remanding when the ALJ failed to find that claimant had acquired transferable skills or identify any such skills); *Tansksley v. Colvin*, 3:12–CV–02050–BH, 2013 WL 5350912, at *9 (N.D. Tex. Sept. 24, 2013) (same). *But see Muehling*, 2013 WL 1194078, at *4 (finding vocational expert's testimony that claimant had transferable "customer service skills" was "insufficient" to support the ALJ's transferability determination).

In addition, the vocational expert testified that Parks' past work as a contract coordinator had a specific vocational preparation (SVP) of 8. (Tr. 18.) On the other hand, the jobs of order clerk and procurement clerk have an SVP of 4. (Tr. 19.) As such, the jobs identified by the ALJ require

a lesser degree of skill than the work previously held by Parks.  *See* § 404.1568(d)(2).  There are no unexplained conflicts between the vocational expert's testimony and the jobs identified by the ALJ as described by the Dictionary of Occupational Titles.  *See Jensen v. Barnhart*, 436 F.3d 1163, 1167–68 (10th Cir. 2006) (finding claimant's basic business and clerical skills, such as information giving and making judgments, transferred from claimant's past job as a district manager to the jobs of information clerk, telephone solicitor, and reservation clerk).

In sum, the ALJ specifically identified Parks' previously acquired skills, listed the occupations to which those skills transferred, and included evidence that those jobs exist in significant numbers in the national economy.  *See* SSR 82-41, 1982 WL 31389, at *7.  Because substantial evidence supports the ALJ's finding that the skills Parks acquired as a contract coordinator are transferrable to the jobs of order clerk and procurement clerk, the Commissioner's decision is conclusive and must be affirmed.

## V.     Recommendation

For the foregoing reasons, the undersigned recommends that the United States District Court affirm the Commissioner's decision and dismiss Parks' Complaint with prejudice.

## VI.    Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy.  28 U.S.C. § 636(b)(1) (2013); Fed. R. Civ. P. 72(b).  To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed

9

determination is found.  An objection that merely incorporates by reference or refers to the briefing

before the magistrate judge is not specific.  Failure to timely file specific written objections will bar

the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge

that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass*

*v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

    Dated:        February 20, 2014.

                    NANCY M. KOENIG
                    United States Magistrate Judge

10